UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CEDRIC R. JOYCE,

        Plaintiff,

                                Case No. 2:24-cv-132

v.

                                Honorable Robert J. Jonker

UNKNOWN ROAN et al.,

       Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal."). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Hense, Kaskela, and Derry for failure to state a

claim. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claim against Defendant Roan. Plaintiff's Eighth Amendment claim for deliberate indifference against Defendant Roan, premised on Roan's refusal to contact prison health services for Plaintiff's insulin check, remains in the case.

## Discussion

I. **Factual Allegations**[1]

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Correctional Officer Unknown Roan, Registered Nurse Mary Hense, Residential Unit Manager Arthur Derry, and Lieutenant A. Kaskela. (*See* Compl., ECF No. 1, PageID.4.)

Plaintiff was on toplock sanction between August 9 and August 14, 2021. (*See* ECF No. 1–1, PageID.22.) According to MDOC Policy Directive 03-03-105, prisoners on toplock are

---

[1] Plaintiff has attached to his complaint documents detailing an August 10, 2021 incident, including a misconduct report and related grievances. The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16–1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20–4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

2

restricted to their own cell, room, or bunk and bunk area and "shall not leave [this area] for any reason without specific authorization from the appropriate staff person." MDOC Policy Directive 03.03.105, Prisoner Discipline, ¶¶ MMM–OOO (eff. July 18, 2018).[2] This policy directive allows prisoners to be released from toplock for "regular showers, visits, medical care (including individual and group therapy), school, and law library." *Id.*

On August 10, 2021, at 1748 hours,[3] Plaintiff exited his cell and walked towards the officer's desk to inform Defendant Roan that he "was having a serious problem/medical problem involving [his] diabetic glucose level." (Compl., ECF No. 1, PageID.5.) Plaintiff told Roan that his glucose level was 380 on the first check, 391 on the second check, and that he required medical assistance to avoid being sent into seizures. (*Id.*) Roan responded that "he didn't care and that he was writing [Plaintiff] a misconduct/ticket." (*Id.*) Plaintiff continued to press his medical issue, which Roan "ignored," and then "said a couple of derogatory words and told [Plaintiff] to go back

---

[2] The prisoner discipline policy has changed since the events alleged in Plaintiff's complaint. The prisoner discipline policy directive cited above is the policy directive/administrative rule that Plaintiff contends Defendant Roan violated. (Compl., ECF No. 1, PageID.6.) Although the policy directive is not attached to the complaint, the Court may consider it even at this early stage of the proceedings because it is "referred to in the complaint and [is] central to the plaintiff's claim or [because it is a] matter[] of public record." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (internal quotation marks and citations omitted).

[3] The complaint asserts that the relevant events took place on August 6, 2021. (Compl., ECF No. 1, PageID.5.) However, Plaintiff asserts in the documents attached to the complaint that the relevant events took place on August 10, 2021. (*See* ECF No. 1–1, PageID.16, 20, 21 (plaintiff's misconduct grievances and appeal form, each noting the date of the incident as 8-10-21)). This latter date aligns with the date noted on the misconduct report. (*See id.*, PageID.24 (statement from Roan concerning the date of the incident and Plaintiff's being on toplock at that time)). This also aligns with Plaintiff's statements, made in his grievance form, that he believes Roan violated MDOC policy directives, including Directive 03-03-105 concerning Roan's disregard for toplock procedures. (*See id.*, PageID.17.) Given that the core of Plaintiff's claim concerns Roan's responses to Plaintiff's asserted medical needs while on toplock, and these documents indicate the incident took place on August 10, 2021, the Court concludes that this fact from the attached documents trumps the complaint's allegations that the incident occurred on August 6, 2021. *See In re Flint Water Cases*, 960 F.3d at 329.

3

to [his] cell." (*Id.*) Plaintiff asked Roan if he would call health services so Plaintiff could speak with a nurse; Plaintiff also attempted to show Roan the glucose reading, but Roan responded that "he didn't want to see it or care." (*Id.*) Roan then threatened Plaintiff with being sent to "the []hole" if he did not return to his cell. (*Id.*) Plaintiff returned to his cell "and waited for the Units MedLine Diabetic Line to get called."[4] (*Id.*)

Shortly thereafter, Defendant Hense visited Plaintiff in his cell, as she was "doing insulin that evening." (*Id.*) Plaintiff showed Hense his insulin reading from earlier and she had him recheck it. (*Id.*) Plaintiff alleges the level was 383, and Hense asked Plaintiff "why he hadn't had an [o]fficer call over to the [c]linic earlier." (*Id.*) Plaintiff explained that he tried but Roan "refused to and stated that he was going to write [] a misconduct." (*Id.*) At some unspecified point after this, Plaintiff went to the clinic and had a seizure. (*Id.*, PageID.6.) After being treated at the clinic, Plaintiff received a food tray from an unnamed lieutenant; Plaintiff relayed to this lieutenant the details of his encounter with Roan. (*Id.*) The lieutenant indicated he would speak with Roan, though Plaintiff is unsure if that happened. Roan issued a misconduct report, charging Plaintiff with being "Out Of Place." (*Id.*) Plaintiff states he served another five days on toplock due to Roan's August 10, 2021 misconduct report. (*Id.*)

Based on these facts, Plaintiff contends that Defendants Roan, Hense, Derry, and Kaskela violated his Eighth Amendment right to be free from cruel and unusual punishment, asserting they were deliberately indifferent to his medical needs. (*Id.*, PageID.5.) Plaintiff also asserts Roan's misconduct writeup was done in retaliation for Plaintiff "exercising [his] rights of Constitutional

---

[4] It appears that Plaintiff did not have to wait long. The callout for the evening insulin medication line was scheduled to occur at roughly the same time that Plaintiff left his cell to approach Defendant Roan. (*See* Plaintiff's Aug. 10, 2021, Daily Schedule, ECF No. 1-1, PageID.26; Misconduct Rep., *id.*, PageID.24.)

4

Law along with Administrative and Policy Directives." (*Id.*, PageID.8.) Plaintiff names these defendants in their personal capacity under 42 U.S.C. § 1983. (*Id.*, PageID.4.) Plaintiff seeks compensatory and punitive damages, costs, and attorney fees. (*Id.*, PageID.7–8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## III.    Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

5

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**      **Claims Against Defendants Hense, Derry, and Kaskela**

As noted above, Plaintiff purports to raise Eighth Amendment deliberate indifference claims, and possibly First Amendment retaliation claims, against the Defendants. But Plaintiff does not allege facts that show that Defendants Hense, Derry, or Kaskela were involved in the alleged violations. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, and a claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Here, although Plaintiff names Hense, Derry, and Kaskela as Defendants, he fails to allege any facts showing that they engaged in active unconstitutional behavior.

Regarding Nurse Hense, the complaint alleges that she visited Plaintiff in his cell at some point after his encounter with Roan, as she was "doing insulin that evening." (Compl., ECF No. 1, PageID.5.) Plaintiff states that Hense double checked his levels and questioned "why he hadn't had an [o]fficer call over to the [c]linic earlier." (*Id*.) But Plaintiff does not allege that Hense deprived him of his insulin or, for that matter, engaged in any other unconstitutional conduct.

As to any alleged action by Derry or Kaskela, the complaint does not mention them beyond identifying them in the caption and the list of Defendants. (*Id*., PageID.1–2.) To the extent that Kaskela is the lieutenant who gave Plaintiff his food tray and said he would speak with Roan, Plaintiff fails to explain how those actions are active unconstitutional behavior. He certainly fails

6

to provide any connection between Kaskela's actions and Roan's initial refusal to contact healthcare on Plaintiff's behalf or the threat to draft an allegedly retaliatory misconduct report, the purportedly constitutional violations at issue.

Although Plaintiff does not mention Defendant Derry in his factual allegations, Derry's name appears in the misconduct hearing report attached to the complaint. Derry served as the hearing officer for Plaintiff's misconduct hearing. (Misconduct Hr'g Report, ECF No. 1-1, PageID.23.) Nonetheless, neither Plaintiff's allegations nor the attached documents offer any facts that support an inference that Derry participated in active unconstitutional behavior. There is certainly no connection between Derry's participation as the misconduct hearing officer and the initial refusal to contact healthcare on Plaintiff's behalf and/or the threat to write or the actual preparation of the allegedly retaliatory misconduct report.

It is possible that Plaintiff has named Kaskela and Derry because he contends they are responsible as superiors to Defendant Roan. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Similarly, supervisory liability cannot be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official as follows:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

>the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has failed to state a claim against Defendants Hense, Kaskela, or Derry because he has failed to state any *facts* that suggest they participated in active unconstitutional behavior; nor has he alleged any facts that connect the Defendants to the denial of his insulin or the threat to write the allegedly retaliatory misconduct report. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Accordingly, Plaintiff's claims against Defendants Hense, Kaskela, and Derry will be dismissed.

### B.   Retaliation Claim Against Defendant Roan

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

Even accepting that Plaintiff's request for medical care is "protected conduct" and that the sanctions attendant to a determination of guilt on an "out of place" misconduct are adverse action,

Plaintiff's claim fails at the third step. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff asks the Court to infer a retaliatory intent because his protected conduct—the request for medical assistance—immediately preceded the adverse action—the threat to write an "out of place" misconduct. Here, however, Plaintiff engaged in his protected conduct while he was "out of place," at least according to the policy directive he relies upon. See MDOC Policy Directive 03.03.105, Prisoner Discipline, ¶ NNN (eff. July 1, 2018) ("A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person.") Plaintiff admits that he left his cell. He simply contends he was entitled to do so. The policy directive indicates otherwise. Under these circumstances, the critical inference Plaintiff invites, that Roan threatened to write the "out of place" misconduct because of the words Plaintiff spoke while he was out of place, rather than because Plaintiff was out of place, is absurd.

Plaintiff's allegations make clear that he was on toplock on the date in question. That sanction did not allow him to be out of his cell without permission. "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that prisoner's statement that a hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding was insolent and violated an MDOC policy directive and, thus, could not be protected conduct); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment). Because Plaintiff was violating a legitimate prison regulation while he made his medical request, he has failed to allege facts that support an inference that the threat to file a misconduct report for the violation was motivated by the medical request. Therefore, Plaintiff has failed to state a claim for First Amendment retaliation.

### C.  Eighth Amendment Claim Against Defendant Roan

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as the failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* This component is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective

component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, liberally construing the allegations in the complaint as the Court is required to do at this stage of the proceedings, the objective component has been met. Plaintiff alleges that at the time of the encounter with Roan, he was a diabetic who required insulin. (Compl., ECF No. 1, PageID.5–6.) These alleged facts are similar to those in *Garretson v. City of Madison Heights*, where the plaintiff, a diabetic, alleged she was hospitalized after officers failed to provide her with her needed insulin. 407 F.3d 789, 797 (6th Cir. 2005). The Sixth Circuit found the fact of the plaintiff's hospital admission and several-day stay to satisfy "the objective requirement of a 'sufficiently serious' medical need[.]" *Id.* (citing *Farmer*, 511 U.S. at 834, *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)).

As to the subjective component, the picture is not as clear. Based on Plaintiff's allegations and the documents he attaches to his complaint, it is entirely possible that Defendant Roan refused to contact healthcare because Nurse Hense's visit to provide insulin was imminent. In that scenario, the refusal would not support an inference of deliberate indifference. Nonetheless, at this stage of the proceedings, accepting all of Plaintiff's allegations as true, Defendant Roan's brusque disregard for Plaintiff's request provides some support for the inference that Roan was aware of the substantial risk of serious harm to Plaintiff if he did not receive his insulin shot and, at a

11

minimum, had knowledge that harm would result. *See Farmer*, 511 U.S. at 837; *see also Garretson*, 407 F.3d at 798 (finding, on summary judgment, that the prisoner plaintiff's statements to two guards that she required insulin and was past due could be sufficient to prove that the officers were "allegedly aware of facts from which the inference of substantial risk of harm could be drawn"). Thus, Plaintiff's Eighth Amendment claim against Roan, premised on Roan's refusal to contact prison health services for Plaintiff's insulin check, remains in the case.

### Conclusion

The Court will grant Plaintiff's request for leave to proceed *in forma pauperis*. Additionally, having conducted the review required by the PLRA, Plaintiff's complaint against Defendants Hense, Kaskela, and Derry will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim against Defendant Roan will also be dismissed for failure to state a claim. Plaintiff's Eighth Amendment claim against Defendant Roan, premised on Roan's refusal to contact prison health services for Plaintiff's insulin check, remains in the case.

An order consistent with this opinion will be entered.

Dated:   March 14, 2025          /s/ Robert J. Jonker
                                 Robert J. Jonker
                                 United States District Judge